# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                    |   |                                   |
|------------------------------------|---|-----------------------------------|
| UNITED STATES OF AMERICA,          | ) |                                   |
|                                    | ) |                                   |
| v.                                 | ) | Criminal Case No. 8-cr-123 (RMC)  |
|                                    | ) |                                   |
| YAHYA ZAITAR,                      | ) |                                   |
|                                    | ) |                                   |
| Defendant.                         | ) |                                   |

## MEMORANDUM OPINION

Yahya Ali Zaitar is charged with international drug trafficking in heroin destined for this country. Mr. Zaitar was apprehended in Romania on April 14, 2008, where he was initially questioned by agents of the U.S. Drug Enforcement Agency ("DEA") and then extradited to this country, where he was arraigned on August 18, 2008. He speaks a Lebanese dialect of Arabic as his native tongue, knows some Spanish, and can also converse in Portuguese.

Because of the varying extradition processes of different foreign nations, the United States obtained separate Indictments against Mr. Zaitar and his brother, Nemr Zhayter, though they are both charged in the same heroin conspiracy. Criminal Case No. 08-cr-123 was indicted on April 25, 2008. The Indictment in this case charges Mr. Zaitar with conspiring to traffic heroin in Paraguay, Brazil, Romania, and elsewhere to the United States. Nemr Zhayter was separately indicted on July 17, 2008, in Criminal Case No. 08-cr-214, on the same conspiracy. He was detained for extradition in Paraguay, and after lengthy legal proceedings and appeals concerning extradition, removed to this country on February 24, 2011. The two cases were joined for purposes of trial, set for May 14, 2012. On May 2, 2012, Mr. Nemr Zhayter entered a plea agreement with the

Government to plead guilty to an Information and the United States will dismiss Mr. Zhayter from the Indictment in his criminal case at the time of sentencing.

The Court heard argument regarding Mr. Zaitar's motion to suppress statement evidence and motion to dismiss for undue delay and violation of speedy trial rights on March 2, 2012. *See* Dkt. ## 41, 51. The Court will grant the motion to suppress, but deny the motion to dismiss.

## I. ANALYSIS

### A. Motions to Dismiss for Undue Delay and Violation of Speedy Trial Rights

Nemr Zhayter filed a motion to dismiss for undue delay and speedy trial violations on August 12, 2011. *See* Dkt. # 35, 8-cr-214. Yahya Zaitar joined in this motion on August 25, 2011 and filed a separate motion on that date.[3] *See* Dkt. # 51.

**1. Speedy Trial Act**

Mr. Zaitar has been in custody in the United States since August 2008. His trial will commence on May 14, 2012, almost four years later. Mr. Zaitar first appeared before a magistrate judge of this Court on August 18, 2008, which constitutes the starting point for calculation of the 70-day speedy trial time period.[4] *See* 18 U.S.C. 3161(c)(1). Thus, in the absence of justified continuances under the Speedy Trial Act, 18 U.S.C. § 3161, *et. seq.*, Mr. Zaitar's trial on the heroin charge would have commenced on or by October 27, 2008. The sanction for violation of the Speedy Trial Act is dismissal of the Indictment, either with or without prejudice. *See* 18 U.S.C. §

---

[3] The Court granted Mr. Yahya Zaitar joinder in Mr. Nemr Zhayter's motion on August 25, 2011. *See* Minute Order, August 25, 2011.

[4] Yahya Zaitar is separately charged with a cocaine conspiracy in criminal case no. 07-cr-329.

3162(a)(2). Several bases for exclusion of time under the Speedy Trial Act exist in this case.

First, while the Government indicted Yahya Zaitar and Nemr Zhayter separately for purposes of extradition from separate foreign countries, they are alleged to be co-conspirators who should be tried together. "[D]efendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986).[5] The Indictments remain separate in order to fulfill the terms of extradition. However, it was clearly intended from the beginning, and so understood by Mr. Zaitar, that the two cases would be joined for trial. Because they were joined for trial, the speedy trial clock did not begin to run for Yahya Zaitar until Nemr Zhayter arrived in the United States in February 2011. *See* 18 U.S.C. § 3161(h)(6) (allowing "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted").

Mr. Zaitar now contends that the delay in his case was unreasonable and, therefore, violative of the Speedy Trial Act and his constitutional right to a speedy trial. However, Mr. Zaitar sought and agreed to repeated continuances because of the complexity of the case *and*, more personally, because he wanted to confer with his brother, Nemr Zhayter, before deciding whether to enter a plea. Although Mr. Zaitar now wishes to disengage from these reasons, the record demonstrates that they caused his repeated requests for a continuance and knowing acquiescence to the same. In his motion, counsel admits the point:

Between August 2008 and December 2010, Mr. Zaitar,

---

[5] *See also United States v. Calle*, 120 F.3d 43, 46 (5th Cir. 1997) ("[I]n a multi-defendant prosecution . . . the Speedy Trial clock begins to run when the last co-defendant makes his initial appearance in court."); *United States v. Dota*, 33 F.3d 1179, 1183 (9th Cir. 1994) (noting that the "established rule" is "that the speedy trial clock begins to tick on the date the last codefendant appears").

> through counsel, waived time under the Speedy Trial Act, so
> counsel and he could adequately review the records, so he
> could wait to determine if there would be a disposition of
> this matter (and 07-329) until his brother was brought here,
> and since the government had provided notice to the Court
> and counsel that this matter would be joined with US v
> Nemr Zhayter (08-214), counsel conceded that for a certain
> period of time, the Speedy Trial Act would not begin to run
> until his "codefendant" was brought to Court.*
>
> *Mr. Zaitar addressed the Court at the last status hearing [on
> August 3, 2011, speaking in English] and stated that he does
> not agree with the representations made by both counsel and
> previous counsel to the Court regarding any waiver of
> Speedy Trial and that he had never himself agreed to waiver
> of Speedy Trial.

Mot. to Dismiss [Dkt. # 51] ¶ 2. While a defendant cannot "waive" his right to a speedy trial,[6] the record reveals here, and the Court clearly recollects, reasons for the delay that were in the interest of justice. These reasons included the on-going difficulties with the complexities of this case because relevant documents and conversations on wiretaps are in the Lebanese dialect of Arabic, Spanish, Portuguese and Romanian – all of which has had to be translated and understood, in the context of alleged wide-ranging international drug trafficking, by English speakers – and the clear signals that Mr. Zaitar intended to enter a plea but only after he could confer, in person, with Mr. Zhayter.[6] Delay so that trial counsel could understand the facts and advise Mr. Zaitar and/or so that

---

[6] *See Zedner v. United States*, 547 U.S. 489, 500-03 (2006); *United States v. Sanders*, 485 F.3d 654, 657-58 (D.C. Cir. 2007).

[6] The Government provides a detailed rendition of these events in its Response. The difficulties in translating the transcripts in this action has also been well-documented by the Government on the record through numerous status reports and at status conferences. To this date, the parties are still working on final form translations of these documents so that they may be ready for trial. *See* Dkt. # 92. The Court will not add these details to this Opinion, but it notes them as a basis for its decision and incorporates these documents and the full record in this matter into its Opinion.

Mr. Zaitar could consider a non-trial disposition if acceptable to Mr. Zhayter was for either reason, individually and jointly, excludable under the Speedy Trial Act in the interest of justice. *See* 18 U.S.C. § 3161(h)(7)(A) (excluding delay where "the ends of justice [are] served by taking such action [and] outweigh the best interest of the public and the defendant in a speedy trial").

In addition to the wait necessary for Mr. Zhayter to arrive, the Court properly excluded time under § 3161(h)(7)(A) before and after Mr. Zhayter arrived in this country in February 2011 because of the complex nature of this case. *See* 18 U.S.C. § 3161(h)(7)(B)(i)-(iv) (listing complexity of an action and necessary time for defense counsel to prepare effectively as factors to consider when deciding whether the ends of justice require exclusion of time under the Speedy Trial Act). The need to exclude time in order for counsel to prepare adequately for trial is acute in this case. Among other difficulties, Mr. Zaitar experienced changes of counsel during the pretrial phase, forcing a "back to the beginning" and "hurry to catch up" stress on the defense. Mr. Zaitar terminated his first counsel ten months after his arrival, and his second trial team withdrew in September 2011. His most recent trial team was appointed by the Court in September 2011.[7] Effective trial preparation is assured to criminal defendants and continuances to allow time for such preparation are a necessity.[8]

---

[7] Mr. Zhayter terminated his initial lawyer three and one-half months after his arrival in the United States and is now represented by counsel appointed in June 2011.

[8] This Court also excluded time in the interest of justice because the parties (first Mr. Zaitar and then, after February 2011, Messrs. Zaitar and Zhayter) were engaged in plea negotiations. "In current federal practice, plea negotiations play a vital role. [There is] no reason why an 'ends of justice' continuance may not be granted in appropriate circumstances to permit plea negotiations to continue." *United States v. Fields,* 39 F.3d 439, 445 (3d Cir. 1994). *But see United States v. Ramirez-Cortez*, 213 F.3d 1149, 1156 (9th Cir. 2000) ("'[n]egotiation of a plea bargain is not one of the factors supporting exclusion'") (quoting *United States v. Perez–Reveles*, 715 F.2d 1348, 1352 (9th Cir.1983)). The Government submits, and the Court recollects, that the

Further, the Court excluded time to obtain evidence from a foreign country. Time is properly excluded under the Speedy Trial Act if an "official request" for evidence has been made to a foreign country. *See* 21 U.S.C. § 3161(h)(8). Requests made under a Vienna Convention Mutual Legal Assistance Treaty qualify as such requests. *See* 18 U.S.C. § 3292(d) ("[T]he term "official request" means . . . a request under a treaty or convention."). The Government submitted such a request (the "MLAT" request) to Paraguay on January 4, 2011, before Mr. Zhayter's extradition. That government officially responded on June 16, 2011, when it produced documents and electronic evidence to a DEA Special Agent based at the U.S. Embassy in Asuncion, Paraguay. While this evidence speaks directly to the charges against Mr. Zhayter, it also supports the alleged conspiracy between the co-defendants and, thus, the MLAT provides a basis for delay in Mr. Zaitar's trial under the Act.

Finally, the Court notes that §§ 3161(h)(1)(D) and (h)(1)(H) allow exclusion of time associated with pending pretrial motions. Time may be excluded under the Act: (1) from the date a motion is filed to the conclusion of a hearing on that motion; (2) from the conclusion of a hearing until all submissions of counsel are received by the court; and (3) a period, not to exceed 30 days, after the record is closed for the court to decide the motion. *Henderson v. United States*, 476 U.S. 321, 329-30 (1986). In this case, pretrial motions were filed on July 26, 2011, August 8, 2011, and August 22, 2011. The Court set a hearing on these motions in October 2011 and required briefing to be completed by the end of September 2011. However, in the midst of this briefing schedule, Mr. Zaitar parted ways with his counsel and the schedule was suspended. New counsel was given until

---

parties were engaged in plea negotiations between May 27, 2011 and July 11, 2011. Pre-trial motions and status conferences in this case were further delayed at the Defendants' request because the parties again entered into plea negotiations at the end of 2011. *See* Dkt. ## 75 & 76.

December 2011 to file new motions and assess the pending motions in this case. *See* Minute Order, October 7, 2011. As a result, briefing was not completed on most pretrial motions until February 1, 2012 and some motions continued to be briefed until March 23, 2012.[9] The Court held an initial hearing on pretrial motions on March 2, 2012, where it considered Mr. Zaitar's motions filed in July and August. No time ran on the speedy trial clock between the filing of Mr. Zaitar's motions and this hearing. The Court held a separate hearing on April 16-17, 2012 (re-set from March 28-29 due to an ongoing criminal trial before this Court) on motions filed by Mr. Zaitar and Mr. Zhayter on December 21, 2011 because these motions required the Court to hear evidence. Time was also excludable under the speedy trial clock between the date these motions were filed and thirty days after the date of this hearing while the Court took these motions under advisement.

The Court finds that there has been no violation of Mr. Zaitar's rights under the Speedy Trial Act on the facts of this case, despite the delay in bringing him to trial. The interests of justice, request for foreign evidence, and Mr. Zaitar's pretrial motions fully excluded time under the Speedy Trial Act. His motion to dismiss due to speedy trial will be denied.

**2. The Sixth Amendment**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI. This constitutional right stands separate from the statutory right under the Speedy Trial Act. All parties agree that a Sixth Amendment claim is analyzed under the four factors articulated by the

---

[9] The Court requested further briefing on Mr. Zaitar's motion to dismiss case pursuant to Federal Rule of Criminal Procedure 12(b)(3). *See* Minute Order, March 5, 2012.

Supreme Court in *Barker v. Wingo*: whether the delay was uncommonly long, reason for the delay, defendant's assertion of his speedy trial right, and prejudice to the defendant. 407 U.S. 514, 530 (1972).

Under the first factor, a Court must consider two questions. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, . . . since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). "Once the accused makes this threshold showing, 'the court must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *United States v. Tchibassa*, 452 F.3d 918, 923 (D.C. Cir. 2006) (quoting *Doggett*, 505 U.S. at 652).

Mr. Zaitar clearly makes this threshold showing. He has been held since August 2008 and his trial will begin in May 2012, almost four years later. This delay, far exceeding one year, by its very length is presumptively prejudicial to Mr. Zaitar. *See United States v. Gibson*, 353 F.3d 21, 27 (D.C. Cir. 2003) ("In the pre-trial context, delays exceeding a year are sufficient to invoke judicial scrutiny.").

The Court next turns to the reason for the delay. The burden is on the Government to explain the cause for the delay and to demonstrate its diligence in prosecuting this action, although all parties' actions are considered. *See Doggett*, 505 U.S. at 652; *United States v. Fernandez*, 618 F. Supp. 2d 62, 70 (D.D.C. 2009). Valid reasons for delay satisfy the Sixth Amendment's requirement for a speedy trial. *Barker*, 407 U.S. at 531. A majority of the delay in this matter is attributable to the complexity of preparing an international drug trafficking case for trial and Mr.

Zaitar's desire to wait for his brother before accepting a plea in this case.

The complexity of the prosecution cannot be overstated. The alleged facts alone, insofar as known to the Court, are complicated: Defendants are charged with heroin trafficking involving points in Paraguay, Brazil, Romania and the United States. The investigation was pursued by the DEA through the assistance and legal processes of foreign countries. Retrieving evidence has required MLAT requests and reliance on international diplomacy. Once received, documents and wiretaps in multiple foreign languages had to be translated: first for working purposes for prosecutors and defense counsel and then, when plea negotiations floundered in early summer 2011, formally for trial use.[10] Some of what the Government elected not to translate, Defendants have apparently pursued independently. Variations in Arabic dialects were realized only in July 2011 and translations revised for accuracy. The translation process is ongoing. Access to appropriate translators has been an issue throughout for the Court, prosecutors and defense. Finally, obtaining the presence of Mr. Zhaytar was itself highly complicated. The extradition proceedings in Paraguay, including multiple appeals by Mr. Zhayter, played out over many years.

And then there was Mr. Zaitar, waiting in the United States for his brother to arrive and assuring the Court, through counsel, that it was his intention to enter a plea after he consulted with Mr. Zhayter.[11] Much of the delay here is attributable in part to the admirable but lengthy legal

---

[10] Because of budget constraints, the Government informed Defendants and the Court that it was suspending the finalization of translations for trial use to save money during plea negotiations, both in the Spring of 2011 and towards the end of calendar 2011, when the parties resumed plea efforts. Defendants concurred.

[11] At the August 12, 2011, hearing at which the September trial was continued, Mr. Zaitar insisted, in English, that he had never wanted to delay his trial pending Mr. Zhayter's extradition. His current position is belied by the record evidence.

process in Paraguay. Only after Messrs Zaitar and Zhayter were able to jointly engage in plea negotiations did it become clear that trial would be necessary.

Mr. Zaitar lost patience in December 2010 and sought a date-certain for trial, with or without his brother. In response, the Government forecast Mr. Zhayter's early-2011 arrival. Thereupon, the Court set two trial dates: one in April 2011 for Mr. Zaitar alone in the absence of Mr. Zhayter and one in September 2011 if Mr. Zhayter were extradited as forecast. At Mr. Zaitar's request, defense counsel for Mr. Zhayter was immediately appointed in December 2010 so that he could become familiar with the case and, thus, ready for trial. As indicated above, Mr. Zhayter arrived in February 2011; the April trial date was vacated and trial confirmed for September 2011.

Mr. Zhayter replaced his counsel in July 2011, but the trial date in September held firm. In August 2011, however, the Government sought a continuance to complete its formal trial translations after realization of translation difficulties with the Lebanese dialect of Arabic. Counsel for Messrs. Zaitar and Zhayter made it clear on the record that they were not authorized by either client to agree to any continuance of any duration. The written record demonstrates this fact. Counsel also made it clear to the Court that if it granted the continuance over their objections, both lawyers would benefit from additional time for trial preparations. The Court granted the continuance, over Defendants' express objections, to May 2012, the first available slot on its calendar due to another multi-defendant criminal trial. The need for a continuance in September 2011 is traceable to the Government, which had paused in preparation of final trial transcripts to save money during plea negotiations and then discovered a problem between different Arabic dialects, forcing a review of all translations. The duration of the continuance is attributable, however, to the *Court's* trial schedule for a different lengthy, criminal multi-defendant trial and not to the

Government.[12]

The third *Barker* factor also does not support Mr. Zaitar's motion. A defendant's ability to prove a denial of his Sixth Amendment speedy trial right hinges on his having asserted such a claim. *See Barker*, 407 U.S. at 529, 532. "The question . . . is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). Mr. Zaitar did not demand a trial date until December 2010, when he decided not to await his brother any longer, and his trial will begin in May 2012, more than one year later. However, the Court set two trial dates immediately upon his demand, one in four months and one in nine months. He concurred in both.

The question thus reduces to Mr. Zaitar's strenuous objection to the continuance of the September 2011 trial date to May 2012. Yet, since August 2011, Mr. Zaitar has changed counsel and his new trial team has required time to prepare for trial and, albeit unsuccessful, another effort was made to work out a pre-trial disposition in December 2011. The record is no less complex for new counsel than it was for Mr. Zaitar's prior counsel, with the lucky exception that the evidence to be presented by the Government at trial is now better known. His late change in counsel significantly undercuts Mr. Zaitar's assertion of a Sixth Amendment violation.

Having found that Mr. Zaitar suffered a presumptively prejudicial delay in going to trial; that the Government and the record demonstrate valid reasons for the delay; that Mr. Zaitar did not assert a right to speedy trial until December 2010 and complained further only in August 2011,

---

[12] Moreover, defense counsel made it clear at hearings held on April 11, 2012 and on April 18, 2012 that they continue to have difficulties completing review of the foreign language evidence in this matter. As a result, it seems that Mr. Zaitar is not prejudiced by the length of delay.

after which he changed trial teams entirely; the Court turns to whether he has demonstrated any prejudice.

Mr. Zaitar claims no specific form of prejudice, but the Court does not discount his lengthy incarceration in the D.C. Jail or his desire for finality. Nonetheless, these imprecise, but real, forms of prejudice do not overcome the valid reasons for delay here. Trial was set in April 2011, as soon as the Court's calendar would allow, once Mr. Zaitar asserted his right to a speedy trial. That date was continued to September 2011 only because Mr. Zhayter actually showed up. The Government then requested a continuance for good reason, but due to the Court's schedule it meant that Mr. Zaitar could not go to trial until May 2012. Moreover, Mr. Zaitar's change in counsel after the continuance was granted made an earlier trial unfeasible given the time needed for new counsel to become apprised of the evidence and adequately prepare.

The motion to dismiss for violation of Mr. Zaitar's Sixth Amendment right to a speedy trial will be denied.

### B. Motion to Suppress Statement Evidence

Yahya Zaitar moves to suppress statements he made while in police custody on April 14, 2008, in Romania. The Government indicates that there are two sets of statements: those made by Mr. Zaitar after his arrest and during a 40-minute transport to the police station; and those made at a Romanian police station in response to questioning by a U.S. DEA agent. The Government has no plans to use the former statements except, possibly, in rebuttal, but argues that the latter can be entered into evidence. Mr. Zaitar asserts violations of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel.

### 1. Facts of Interrogation

At the police station in Romania, where the Government concedes Mr. Zaitar was in custody, he was met by two DEA agents, one of whom spoke some Portuguese and the other of whom spoke only Spanish. The transcript of that interrogation shows that the following exchange took place in Portuguese (apparently, a Romanian official was also speaking in the background on the telephone). When the DEA agent first attempted to inform Mr. Zaitar of his rights, it is clear that he did not understand. U.S. Opp'n, Ex. 2 [Dkt. # 64-2] at 1. The DEA agent then told Mr. Zaitar, in Portuguese, "You have rights. You don't have to say anything. Anything you say we can use against you." *Id.* at 2. To these more direct statements, Mr. Zaitar answered, "Yes." *Id.* The DEA agent then said, "Okay, you have right to talk to lawyer, uh, before, we will talk to you." *Id.* Apparently understanding, Mr. Zaitar answered that he had no money for a lawyer. The agent then said,

> During, uh, interrogation of you, okay? If you can't, uh, if you don't have money, uh, for a lawyer, a lawyer. Government can pay a lawyer for you. These rights are from the United States. Obvious we're not in the United States – outside – but we don't need to talk about at this moment: you understand everything here, understand?

*Id.* at 3. Mr. Zaitar answered, "I understand Portuguese." *Id.* When the agent again asked whether Mr. Zaitar understood, he responded, "Yes. Yes." *Id.*

Thereafter, as the DEA agent questioned Mr. Zaitar in Portuguese, Mr. Zaitar answered his questions. Language does not appear to have been a real barrier to communication. When asked about his native language, Mr. Zaitar answered, "Lebanese, I, uh, Portuguese I understand everything . . . . Spanish I'm understanding." *Id.* at 8.

**2. Analysis**

The self-incrimination clause of the Fifth Amendment states that no "person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court found that the privilege against self incrimination protects individuals from an "informal compulsion exerted by law-enforcement officers during in-custody questioning." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Miranda*, 384 U.S. at 461). *Miranda* safeguards are required when a person is in custody and subject to interrogation. *See, e.g., Rhode Island v. Innis*, 446 U.S. 291, 299 (1980).[13] A person in custody must be warned that he has a right to remain silent, that his silence will not be used against him, that any statement he makes may be used against him, and that he has the right to counsel, either retained or appointed. *Muniz*, 496 U.S. at 588. These warnings must be given before any interrogation.

*Miranda* safeguards have been applied in an international context based on the logic that a violation of Fifth Amendment rights occurs when a compelled statement is offered at trial in the United States. *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 199 (2d. Cir. 2008). "For this reason, it naturally follows that, regardless of the origin – *i.e.*, domestic or foreign – of a statement, it cannot be admitted at trial in the United States if the statement was 'compelled.'" *Id.* However, U.S. law enforcement officers are allowed to alter the parameters of *Miranda* warnings based on the limitations of local context in a foreign country. *See Crawford v. Rodriguez*, 512 F.2d 860, 863 (10th Cir. 1975) (warning in Mexico that omitted right to a lawyer but included right to speak with a consular official was sufficient); *see, e.g., United States v. Dopf*, 434

---

[13] There is no dispute about Mr. Zaitar's custodial status at the time of the DEA agent's questioning.

F.2d 205, 207 (5th Cir. 1970) (finding similar warnings sufficient).

An individual may waive his Fifth Amendment privilege "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. On a motion to suppress, the government need prove waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

> The inquiry as to whether waiver was coerced has two distinct dimensions: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 474 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). "The voluntariness of a waiver of this [*Miranda*] privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Connelly*, 479 U.S. at 170.

In this case, the Court finds no coercion, intimidation or deception of Mr. Zaitar. The conversation was calm, if somewhat halting, and nothing in Mr. Zaitar's responses suggests otherwise. His basic understanding of the Portuguese spoken by the DEA agent is demonstrated by his ability to answer questions and by his assurance that while his native tongue is Lebanese Arabic, "Portuguese I understand everything." The communication of his right to remain silent and that anything he said could be used against him was in simple terms to which Mr. Zaitar responded

affirmatively. Nothing in that exchange raises concerns that he failed to understand or waive those rights.

The only question is whether Mr. Zaitar understood and waived his right to counsel before questioning. His response, "I understand Portuguese," is not entirely clear. The circumstances were undoubtedly difficult for the DEA agent, as they were in Romania. If Mr. Zaitar demanded a lawyer, he may not have known whether or what counsel might be hired by the United States to advise Mr. Zaitar and access to a consul from Lebanon may also have been doubtful.[14] Brazil does not appear to have an embassy or diplomatic presence in Romania.

However, since the United States initiated the arrest of Mr. Zaitar by way of its provisional arrest warrant, it had the responsibility to know how and what to do if, on advisement, Mr. Zaitar demanded to speak to a lawyer before questioning. The inherent difficulties notwithstanding, Mr. Zaitar's statements cannot be used against him in a U.S. prosecution unless he waived his rights before questioning. The Court finds that the evidence is unclear and that the Government has not proved his waiver by a preponderance of the evidence. Therefore, Mr. Zaitar's motion to suppress his post-arrest statements to DEA agents will be granted.

Mr. Zaitar also asserts a violation of his Sixth Amendment right to counsel. However, the Sixth Amendment right to counsel is offense-specific and occurs only after indictment. *See McNeil v. Wisconsin*, 501 U.S. 171, 176 (1985). Mr. Zaitar made the statements at issue on April 14, 2008, but he was not indicted on the heroin conspiracy until the Indictment in 08-cr-0123 was returned on April 28, 2008. Therefore, he had no constitutional right to counsel under the Sixth

---

[14] Today, Lebanon has an embassy in Bucharest and a consulate in Constanta, Romania. It is unclear what Lebanon's foreign relations were with Romania in 2008.

Amendment for questioning regarding heroin trafficking on April 14, 2008, and his motion to suppress such statements on Sixth Amendment grounds will be denied. In contrast, his Indictment in 07-cr-329 was returned on November 30, 2007, and charges Mr. Zaitar with conspiracy to traffic in cocaine intended for the United States. Therefore, he had a Sixth Amendment right to counsel before questioning on the alleged cocaine conspiracy as of April 14, 2008. As discussed above, Mr. Zaitar did not waive that right. The motion to suppress will also be granted as to any statements concerning cocaine trafficking on Sixth Amendment grounds.

### C. Mr. Yahya Zaitar's Joinder

Mr. Yahya Zaitar moved to join generally in motions filed by Mr. Nemr Zhayter at Dkt. # 38. Because Mr. Zaitar separately filed several motions attacking the sufficiency of his Indictment and the jurisdiction of this Court over the crimes alleged in that Indictment, his motion to join in Mr. Nerm Zhayter's motion to dismiss is denied. *See* Dkt. # 72, 8-cr-214. Mr. Zaitar's joinder in other motions filed by Mr. Zhayter was also previously denied.

## II. CONCLUSION

For the reasons stated, the Court will grant Yahya Zaitar's motion to suppress statements made in Romania during questioning by a U.S. DEA agent. In all other respects, the pretrial motions addressed herein will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date:  May 7, 2012                              /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge